## Crosetti's Estate.

*Evidence—Witnesses—Competency—Party dead—Decedents' estates—Act of May 23, 1887, sec. 5, clause (e), P. L. 158.*

Where upon the death of both husband and wife, the husband's executors claim at the audit of the account of the wife's administrator, that a bank deposit in the wife's name was really the property of the husband, a daughter of both the deceased parties is not a competent witness under the Act of May 23, 1887, P. L. 158, in support of the claim of the wife's administrator, since the daughter is a party testifying in interest adversely to the father's estate.

In the distribution of the estate of a deceased person where a claim is presented in the ordinary way against such estate, the heirs, legatees and

other interested parties are competent to testify in favor of such estate but incompetent to testify adversely to it.

*Evidence—Competency of witness—Party—Act of May 23, 1887, P. L. 158.*

The provisions of the Act of May 23, 1887, P. L. 158, relating to the incompetency of witnesses on account of interest where a party to the subject in controversy is dead, applies to civil proceedings before any tribunal in the commonwealth.

*Orphans' court—Jurisdiction—Dispute as to title to property—Evidence—Husband and wife.*

While it is the general rule that no one can claim in the distribution of a fund in the orphans' court except through the decedent, as creditor, legatee or next of kin, there is an exception where the fund is shown to be wrongfully included in the account, either because, though in the name of the decedent, it is really a trust, or where title or ownership is in another person. Thus where an administrator of a wife includes in his account a deposit in bank in the wife's name, and the executor of the husband claims the deposit as a part of the husband's estate, the orphans' court has jurisdiction to pass upon the question of title.

*Husband and wife—Money deposited in wife's name—Gift—Presumption—Evidence.*

Money on deposit in the name of a wife is prima facie her money, and where it is claimed by her husband at her death or by the husband's executor, the burden is upon the claimant to prove that it is his property.

Bank deposits stood in the name of a wife at her death. The husband took out letters of administration on her estate, setting forth in his petition that the estate consisted of goods and chattels, rights and credits amounting exactly to the amount of deposits. He gave his bond for double this amount. He died before the expiration of the year from her death without having completed administration of his wife's estate, and without having claimed the deposits as his own. His executors subsequently filed the husband's account as administrator of his wife, in which they included the deposits, but at the audit of the account they claimed that the deposits belonged to the husband. The evidence in favor of the wife's ownership was supported by declarations of the husband, and the contrary evidence was meager, loose and unsatisfactory. *Held,* that the court's finding that the fund was the property of the wife was sufficiently supported by the evidence and would not be reversed by the Supreme Court.

Argued Jan. 11, 1905. Appeal, No. 197, Jan. T., 1904, by Joseph J. Crosetti and Frank Cuneo, executors of Christopher Crosetti, deceased, the administrator of Maria Crosetti, deceased, from decree of O. C. Phila. Co., Jan. T., 1904, No. 612, dismissing exceptions to adjudication in Estate of Maria Crosetti, deceased. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to adjudication.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*E. B. Lewis*, for appellants.—The only one of the executors called as a witness was Frank Cuneo, the life-long friend and acquaintance of the decedent and her husband, and surely his testimony is not inadmissible because he cannot be said to be an interested party in an adverse sense, as he is not a legatee or devisee under the will of the father and cannot receive any portion of the mother's estate because she died intestate ; not being a relative, he cannot receive any portion by the intestate laws.

In Foringer v. Sisson, 14 Pa. Superior Ct. 266, and Bickels's Estate, 9 Pa. Dist. Rep. 129, it was decided that the evidence of a person who was also executor of an estate claiming adversely to another estate was admissible.

To prove that the money was given to the decedent by her husband, the declarations of the husband should be more clear and convincing in their bearing on the subject than in the case of a stranger : Murphy v. O'Brien, 17 Montg. Co. Law Repr. 96.

A declaration of a husband to the effect that certain property belonged to his wife was not admissible as evidence in favor of the wife. The mere possession of money by a wife is no evidence of her title to it ; it ordinarily implies that she is holding it for her husband : Parvin v. Capewell, 45 Pa. 89 ; McDermott's App., 106 Pa. 358.

*Edwin C. Nevin*, for appellee, was not heard.

OPINION BY MR. JUSTICE ELKIN, April 17, 1905 :

The entire estate of Maria Crosetti, deceased, consists of two deposits in the name of decedent, one in the Philadelphia Saving Fund Society, and the other in the Western Saving Fund, amounting at the time of her death to the sum of $2,784.69. The appellants claim that said deposits were made by Christopher Crosetti, the husband, in the name of the wife for convenience, but in fact belonged to him. In support of

this contention they offer the testimony of Frank Cuneo, one of the appellants, his son, F. J. Cuneo, Antonio Crosetti and John Crosetti, sons of Christopher Crosetti, deceased. The appellee admits that the whole estate is made up of the deposits in said banking institutions. It is not denied that these deposits were transferred by Christopher Crosetti to Maria Crosetti in the lifetime of both parties. It is urged, however, that the facts show and the parties intended a gift by the husband to the wife. The appellee, Louisa Rataliatta, testified as a witness to show that the father intended the money so deposited as a gift, and also offered the testimony of her husband, John Rataliatta, and Charles Huff, an officer of the Saving Fund Society. The question of the competency of Louisa Rataliatta, a daughter of the decedent, as a witness has been raised. We do not consider her testimony necessary to sustain the contention of appellee, yet it is important, and we therefore stop to consider whether she was a competent witness.

Section 5, clause (e) of the Act of May 23, 1887, P. L. 158, provides: "Nor, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party." The language of the statute excludes any person "whose interest shall be adverse to the said right of such deceased." What deceased? The answer is obvious: "Any deceased party to a subject in controversy whose right thereto or therein has passed either by his own act or by the act of the law to a party on the record who represents his interest." It follows, therefore, that if the executors of Christopher Crosetti, deceased, had brought an action in the common pleas Christopher Crosetti must be considered within the meaning of the act as a deceased party interested in the thing or contract in action. In his lifetime he had a right to controvert the alleged gift to his wife. Upon his death this right passed to his legal representatives, and Louisa

Rataliatta, being interested in sustaining the administrator of her mother against the executors of her father, would not be competent to testify to any matter occurring before the death of her father, her interest being adverse to the right of the deceased father: Keener v. Zartman, 144 Pa. 179. The same principle is recognized in Walls v. Walls, 182 Pa. 226, and Semple v. Callery, 184 Pa. 95. In both of these cases, being actions by legal representatives against legal representatives of deceased parties, the witnesses established their competency by executing releases of all their interest in the respective estates. In the case at bar the executors of Christopher Crosetti, instead of bringing their action in the common pleas, came into the orphans' court. It was suggested by the learned auditing judge that this proceeding was irregular, but in order to avoid circuity of action he would pass upon the claim on its merits.

It is true the general rule is that no one can claim in the distribution of a fund in the orphans' court except through the decedent as creditor, legatee or next of kin. This general rule is settled law: McBride's Appeal, 72 Pa. 480; Braman's Appeal, 89 Pa. 78; Winton's Appeal, 111 Pa. 387; High's Estate, 136 Pa. 222. There is, however, an exception recognized in many cases, as for instance where the fund may be shown to be wrongfully included in the account either, because, though in the name of decedent it is really a trust, or where title or ownership is in another person: Marshall v. Hoff, 1 Watts, 440; Miller's Appeal, 84 Pa. 391; High's Estate, 136 Pa. 222; Qualters's Estate, 147 Pa. 124. The present case is clearly within the exception, and the court below had jurisdiction to pass on the same. If, therefore, the executors of Christopher Crosetti are to be regarded as in a court of competent jurisdiction with authority to determine the question of ownership of the property in dispute, clearly Louisa Rataliatta must be considered as an incompetent witness unless a different rule of evidence obtains in the orphans' court than in the common pleas. No such contention, we apprehend, will be seriously made. The fourth section of the act of 1887 is intended to cover the competency of witnesses in a civil proceeding before any tribunal of the commonwealth. The tribunal may be a register of wills,

master, auditor, arbitrator, referee, court of common pleas, at law or in equity, the orphans' court, quarter sessions, the Superior or Supreme Court, or any other tribunal created by law to try causes of action between contesting parties. The act of 1887 makes no distinction between different classes of civil actions, nor does it prescribe one rule of competency for actions in the common pleas and another for proceedings in the orphans' court. Our attention has been called to the rule laid down in Toomey's Estate, 150 Pa. 535; Smith v. Hay, 152 Pa. 377, and Brose's Estate, 155 Pa. 619. We do not dispute the authority of these cases. We consider the law finally settled that in the distribution of the estate of a deceased person where a claim is presented in the ordinary way against such estate the heirs, legatees and other interested parties are competent to testify in favor of such estate, but incompetent to testify adversely to it. In such cases the estate of the deceased person is the thing or contract in action, and under the express terms of the statute witnesses adverse to such estate cannot testify to any matter occurring before the death of the decedent while those in support of the estate may be heard. In the distribution of a fund in the orphans' court creditors, legatees and next of kin claim or take through the decedent, hence the corpus of the estate is the subject-matter for consideration which by act of law has passed to a personal representative being the party on the record who represents the interest of decedent. The rule therefore applies because there is only one party to the thing in action, the decedent whose estate is being distributed.

The question raised in the case at bar does not grow out of the ordinary distribution of an estate, and hence the rule above stated does not apply. This is in fact a controversy between the executors of the deceased husband on one side, and the administrator of the deceased wife on the other, involving the ownership of the whole estate. There are two parties to this action. They are both dead. Their interests have passed to personal representatives, parties on the record. Had an action in the common pleas been instituted by Christopher Crosetti in his lifetime against the administrator of his wife, or had he presented a claim against the estate of his wife before an auditing judge, Louisa Rataliatta would have been competent

to testify in favor of the estate to any matter occurring before the death of her mother: Gerz v. Weber, 151 Pa. 396; Brose's Estate, 155 Pa. 619; Rine v. Hall, 187 Pa. 264; Bank v. Henning, 171 Pa. 399; Dickson v. McGraw, 151 Pa. 98. The death of Christopher Crosetti and the fact that this case involves not a distribution of the estate of Maria Crosetti, but the question of the ownership thereof, makes a change in the situation.    True the mere death of Christopher Crosetti in itself worked no change, but when his rights passed upon his death to a party on the record who represented his interest, and the issue involved the question of adverse ownership between two parties, the witness became interested adversely to the right of the deceased father, one party to the thing or contract in action, and incompetency attached.    To hold otherwise would be to make the death of one litigant more potent in working incompetency than the death of the other.    When both parties to the litigation represent dead persons the death of each works the incompetency of all persons interested in the estate of the other: Trickett on Pennsylvania Law of Witnesses, sec. 217.

As we have hereinbefore stated, the present case is not the ordinary distribution of the funds belonging to the estate of Maria Crosetti, deceased, but is a contest involving the ownership of the funds deposited in the saving fund societies, being the thing or contract in action.    The jurisdiction of the orphans' court only attaches because of the equity powers lodged therein, and under the line of cases cited the auditing judge is authorized to find the facts and decide the questions involved.    It is on this theory alone that the appellants had any standing in the court below.    Both parties to the thing in action being dead, their rights having passed to personal representatives, parties on the record, it follows that Louisa Rataliatta, her husband and her brothers are all equally incompetent to testify to matters occurring in the lifetime of the parents.    We must therefore consider the case without reference to the testimony of these witnesses.    How then does it stand?

It has been frequently held by this court that money on deposit in the name of a wife is prima facie her money, and where it is claimed by her husband at her death the burden is

on him to prove that it is his property: Qualters's Estate, 147 Pa. 124. To the same effect is Earnest's Appeal, 106 Pa. 310. In the present case the two deposits were in the name of the wife at the time of her death, and therefore the presumption arises that the funds belonged to her. This presumption is strengthened by the fact that the husband recognized these funds as belonging to his wife when he took out letters of administration on her estate and proceeded to administer it according to law. Let us see just how the deceased husband treated the estate of his wife.

Maria Crosetti, the decedent, died on November 11, 1902, and on December 19, following, Christopher Crosetti, the husband, appeared before the register of wills and demanded letters of administration on said estate. He presented his petition, which was sworn to before the deputy register of wills, in which he sets out that the goods and chattels, rights and credits of Maria Crosetti, deceased, were valued at $2,784.69, being the exact amount of said deposits. On the same day he made an affidavit to faithfully perform his duties as administrator of said estate, in which he states, inter alia, " that the whole of the goods, chattels, rights and credits of the personal estate she died possessed of in the aggregate, do not in value exceed the sum of two thousand eight hundred dollars." He then gave his bond in the sum of $5,600, with Frank Cuneo and Joseph J. Crosetti, the appellants, as his sureties. He received letters of administration and proceeded to administer the estate. He died on October 22, 1903, before the year had expired in which to file his account. There is no testimony showing or tending to show that he ever questioned the right of his wife to these funds. Every act of the husband negatives the position now taken by his executors, the appellants here.

He who alleges a trust takes the burden of proving it, and all of the essential requisites must be shown by clear, explicit and unequivocal proof: Earnest's Appeal, 106 Pa. 310. In the case at bar the proof does not measure up to this standard. The only testimony offered which tended to prove such a trust was that of Frank Cuneo, with some corroboration by his son. The testimony of these witnesses is indefinite, vague and inconclusive in its effect. In substance they say that Chris-

topher Crosetti and wife came to their office at the time the money was deposited in the name of the wife ; that Christopher Crosetti having other accounts in these banking institutions in his name could not receive interest on such a large amount if deposited to his own credit, and that for the purpose of getting interest on the deposit it was made in the name of his wife. It will be observed that this is what Cuneo said, and not what Christopher Crosetti stated. The testimony is meager, loose and unsatisfactory as to just what was said by the two Crosetti's at the time. The theory on which this contention is based is seriously shaken by an official of the bank who testified that there was no such rule in reference to interest on deposits, and that Christopher Crosetti would have received interest on his account if deposited in his own name just as his wife did when deposited in her name. F. J. Cuneo, son of appellant, who was present when the husband and wife came to the office of his father to have the transfer made, testified that Christopher Crosetti said, "I will put it in my wife's name," and this is in substantial corroboration of the testimony of Frank Cuneo. There is nothing in this testimony that negatives the idea of a gift by the husband to the wife. The fact that Christopher Crosetti said he would put it in the name of his wife supports rather than defeats the gift. His subsequent actions indicate that he intended it as a gift to his wife.

To support the contention of the appellee, we have three important and to our minds controlling facts : first, the moneys were deposited in the name of the wife and subject to her control; second, the husband recognized these moneys as belonging to his wife when he took out letters of administration, gave his bond and proceeded to administer said estate ; third, the accountants when they filed the first and final account of Christopher Crosetti, administrator of Maria Crosetti, deceased, charging themselves with these very funds and making affidavit that the facts stated in their account were true, that the balance shown by the account was correct and belonged to the estate of Maria Crosetti, deceased, admit that the estate did so belong. The questions of fact involved in this case were found in the court below in favor of the appellee and will not be disturbed by an appellate court except upon manifest error, and where there is no evidence to support the finding : Country-

man's Estate, 151 Pa. 577; Mulley v. Shoemaker, 180 Pa. 585; Sutton v. Guthrie, 188 Pa. 359. We do not see that there was manifest error in the findings of fact by the court below. Indeed, we think it would have been manifest error to have found otherwise.

Assignments of error overruled and decree affirmed.